Good morning, everyone. The panel has before it three appeals which are being submitted on the brief without oral argument today, namely, Appeal 3244, Cotroir v. Office of Personnel Management, Appeal 3135, Allen v. United States Postal Service, and Appeal 3203, Marassa v. United States Postal Service. On the argument list, we'll hear argument first in Goldberg v. Bass, Appeal 1519. Ms. Wells, good morning. Please proceed. May it please the Court, I appear on behalf of Appellant Goldberg. Goldberg appeals the decision of the Board of Patent Appeals and Interferences. Involves Claim 75, has the Board improperly broke this limitation into two separate limitations, only the same or only another. That is an improper construction of the claim because it is not the broadest reasonable construction in view of the Goldberg specification. Well, even putting aside the notion of broadest reasonable construction, isn't it simply wrong? The construction? Yes. Yes. It can't be correct. I agree. It is also not consistent with how one of skill in the art would understand the teachings of the Goldberg specification. It is undisputed that a person of skill in the art would understand that Goldberg discloses a method where the Based on the erroneous claim construction, the Board wrongly found that the specification of the Goldberg application did not provide adequate written description support for the involved claims because there was no disclosure of exclusively moving the support to another chamber. Under a proper claim construction, even applying the inherency standard that it be the necessary and only reasonable interpretation of the specification, the Board should have found the claim fully supported. The Goldberg specification teaches that the support necessarily goes into the same or another reaction chamber during the repetitive steps of the polymer synthesis process. There is no place else for it to go. Claim 73 doesn't talk about the same or another, but talks about in another reaction chamber. That's correct. Claim 73 is a comprising claim. It does not exclude moving the support into the same reaction chamber. But for written description, for purposes of getting into interference, it isn't a question of not excluding. You have to have something included. That's what written description is all about. So in the specification at figure 6A and the description of figure 6A, that's at A1629, is figure 6A, and the description at A1594, a batch process is described. In this batch process, it is not significant whether the support is placed into the same or another reaction chamber. It may not be significant, but there is no disclosure of placing it into another. Maybe, isn't there a disclosure of putting them in all of the chambers? One of ordinary skill in art would have understood that the support is placed into, when it's brought back into that bank of chambers, it's placed into either the same one it came out of or a different one. It isn't significant which one it's placed into, and there's no tracking mechanism to make sure it goes back into the same. But that's a turning argument. That's not in the specification. So the specification, the written description requirement doesn't require Ipsos-Virbis disclosure. It just requires that one of skill in the art, that the specification conveys to one of skill in the art. It isn't the Patent Office and the business of examining these disclosures and finding whether there's support, enabling someone to test priority and interference, and shouldn't we defer to the Patent Office on this kind of an issue, written description? So the error of the Patent Office was in their claim construction. The written description is sufficient, and the Patent Office actually found that there was support for the same or another. So the board found that the Goldberg specification describes movement of the support to the same or another reaction chamber, in particular at A26 and 27, they found that the combination of the valve system and separate parallel reaction chambers depicted in Figure 6A appears appropriate for use in the inventive process disclosed, whether biopolymer arrays are synthesized on each support using a cycle of monomer addition steps wherein each support is activated, placed in a reaction chamber for one monomer addition step, removed therefrom for further activation, and replaced in the same or another reaction chamber for yet another monomer addition step. So under a proper claim construction, this should have been sufficient to find the Goldberg specification has support for the involved claims. So put differently, you think they got the facts right as to written description, but got the claim construction wrong? Yes. Just on that one claim? So on claim 73 and 75, so with respect to claim 73, because it is a comprising claim, it could include both a step of bringing it into the same chamber or bringing it into another chamber. Comprising just permits, from an infringement standpoint, inclusion of something else. Comprising doesn't constitute a disclosure of something specific that's not there. So another is disclosed, so same and another is disclosed. Another is a subset of same and another. But even with the comprising language, doesn't the claim require the use of at least two different reaction chambers? Claim 73? 73. So it does require that you move the chamber into another. So if the disclosure only reveals or describes a system where the samples are placed in the same chambers, then there's a problem. But the specification in figure 6A discloses a situation in embodiment where the support can be moved into the same or another. That's not entirely clear. There is some language there that suggests that maybe it could be modified, but is that enough? So I think there's more than just the language that suggests that it could be modified. So in figure 6A, you have the six chambers, and if you're doing a series of repetitive cycles of monoredition, moving it out of the reaction chamber and then moving it back into one of the six reaction chambers, it has to go into either the same one it was in or another. I'm confused about what relief you're seeking, both in the blue brief and in the gray brief, apparently written by other attorneys. There's a blanket statement that everything has to be reversed. There's no differentiation among the claims. If I understand your argument, you have an argument with respect to Claim 75 that's quite separate from anything involving the other claims. So I'm puzzled that the relief sought seems to be that we should reverse the determination of the Board as to each and every claim. So my argument with respect to Claim 75 is the same as my argument with respect to Claim 73. Seventy-three is a comprising claim. Step C recites what it is. Well, okay. If we accept your argument, then Claims 75 and 73 stand in one place, and all the other claims seem to stand somewhere else. But you seem to argue that you're entitled to reversal for all of them because there may have been a mistake with respect to 75 and arguably also 73. I don't follow how all the claims require reversal if one or two were mistakenly analyzed. So all of the claims have the same... I'm using 73 and 75 as an example. 73 because it is the count, and 75 because it has the same in another language. But our position is that all of the claims have this same erroneous construction, that the Board is requiring only another. They're all comprising claims. So like Claim 73, the Board is requiring only 73. So you're saying Claim 73 and every other claim has the same defect that you see in Claim 75, in terms of what the Board decided, all because of the use of the word comprising and nothing more. Because of the use of comprising and because of the improper claim construction that when the claim says to place the support in another reaction chamber, that the Board erroneously construed that as a requirement that it only be placed in another. But what's the source of the error? The only hook I'm hearing from you is that the error is because they didn't give us the benefit of what we ought to have gotten from the fact that we used the transition word comprising. Is there some other source of error in the Board's claim construction for this entire array of claims? So our position would also be that the Board construed the claims with respect to the Bass specification as opposed to the proper construction with respect to the Goldbridge specification. Well, we have case law that suggests that at least a helpful guide, if not determinative, is to look at the patent of the copied claims that were copied in order to provoke the interference. So you can hardly sustain the argument that the Bass patent may not be looked at at all. We have case law saying that it should be looked at. But the Goldbridge claim should be construed in light of the Goldbridge specification, and the Goldbridge specification teaches same or another. Well, that's the question. Is the question that it teaches same or another? The Board found that it teaches same or another. Then why did the Board reject the claims? Because they broke the claim construction into only the same or only another. So in Figure 6a, the support can be moved into any one of the six chambers. It could be the same chamber that was in for the first monomer synthesis, or it could be another. So clearly, the specification describes same or another. All right. Do you want to save your rebuttal time? Yes. Thank you. Mr. Kelberg. Good morning, Your Honor. Good morning. Of course, we know everything you say in your brief, so we don't need to repeat any of that. It would be most helpful, at least to me, if you would kind of directly engage the arguments just made here orally by opposing counsel. I will do that directly, then, Your Honor. The focus seems to be on Claim 75. Well, I'm not sure that's right. That's what I was trying to clarify with her, whether she views all these claims as standing or falling together, or whether 75 is unique. I'm not sure what the position is. Let me step back one step, then. All the claims except Claim 75 require, absolutely require, that a support in the process of synthesizing the chemical array be placed in a first flow cell or reaction chamber, then placed in another, a second flow cell or reaction chamber. That's the key word, and your opponent says the office has interpreted that to mean only another. I'm sorry, only? Isn't that her position? It is an absolute requirement of every other claim with Claim 75. You could have a process. These are iterative processes. You could have a process with 99 repeats, and, in fact, frequently there are more in this technology. You could have a process with 99 repeats, and the first 98 of those moves back and forth through the same reaction chamber. The 99th step, that 99th iteration of monomer deposition, according to every other claim but Claim 75, as argued by the appellant, must move to a second chamber or cell. It must, or it is not inside the claim which requires that. With respect to Claim 75, the board, page 813 of the appendix, page 9 of the board's opinion, sort of cataloged all of the claims and cataloged all of the claims as requiring that this be moved to another chamber underlying another in each quote from the claims. And curiously and possibly too conveniently, with respect to Claim 75, the quote has an ellipsis before another, and what language is missing? The same or. The same or. How do you explain that, and isn't that something of consequence? I don't think it is, Your Honor, because if you're describing a process that has two alternatives, it can move to the same reaction chamber or it can move to another reaction chamber. And certainly the board's interpretation might have said that expressly, but that is the appellant's argument. If you have that claim, you have to describe the full scope of the claim, Your Honor. In other words, you're saying that's a generic claim. I would accept that, Your Honor. It's a genus containing two species. Yes. It embraces a process where you could have all 99 steps in the same or. So a disclosure of one genus is not good, one species is not sufficient for a genus containing two species. Not when the species are absolutely distinct. You're saying they're mutually exclusive. Yeah. You have to have both. Fundamentally, that's the issue. It might have been more helpful if the board had set that out in its opinion, don't you think? Yes, Your Honor. We were in a position to request that. But there is a misconception or misconstruction of the board's language. The board never said in its discussion of Figure 6a that this was an apparatus or a flow system that moves it into the same, moves the support into the same or another chamber. The board said it's an apparatus that could be used in such opposite systems or alternative systems. We never got to enablement. That was an issue. I don't agree with that analysis of the board. But that's what the board is saying, that you could modify the parallel chamber system of 6a, so that you could move the support into the same reaction chamber it left in the prior iteration or another. And what is it you make of that statement? My pagination in the brief is different from the pagination that counsel read from, Your Honor. But I believe that what we're looking at is 815. That's what counsel read to you from. 815? No, Your Honor. Let me take that back. What are you looking for? Maybe I can help you. I am sorry, Your Honor. I am looking for the phraseology of the board's decision that counsel read to you from. Counsel for Goldberg directed us to just a minute ago that the board held that the specification describes or supports the same or another. I've seen that. It looks a little ambiguous in light of the rest of the opinion. But I think I know what you mean if I can find it. Are you talking about page 22 of the board's opinion? 22 of the opinion? Yes. 826. Yes, Your Honor. Near the bottom of that page. Yes. There's the underlining same or another. Same or another. Right. My understanding, Your Honor, of the board's opinion there, what it's expressing, is because this was an issue joint, could you use this 6A to move it to the same or another? Yes, you could. But that's not described. That's the board saying we accept that the parallel banks of 6A, for the purpose of written description, could be used in such a process, but such a process is not described because the alternative of another is nowhere set forth. What about page 1594 of the appendix? This is the Goldberg application, page 46. 1594. Yes, sir. Line 6. You see page 46 of the application, lines 26 through 29, says, although primarily described as performing the same synthesis steps in parallel, the bank of reaction chambers could also be readily modified to carry out, to perform multiple independent chemistry steps. And as Goldberg tells you in his brief, whether it's performing the same steps simultaneously or independent chemical synthesis steps, that is, one monomer in reaction chamber A and a different monomer in reaction chamber B, even then, Your Honor, the Goldberg process and apparatus are indifferent to whether you shuttle the same, reaction chamber or a different reaction chamber. In fact, if you consider that the reaction chambers could, in a much more complicated system, be altered so that each one did a different step at the same time, it would make more sense to shuttle the same support in and out. It doesn't say one monomer addition. It says independent chemistry steps. So now you have each bank, bank A adding monomer A at the time that bank B is adding monomer B. What about earlier in that page, 46, line 6? Following photolysis, several substrate wafers may be transferred to a number of reaction chambers for the monomer addition step. That inherently says other, doesn't it? No. No? Goldberg tells you precisely the contrary. It says it doesn't care. It's indifferent. It is easier, and the testimony of Bill Peck wasn't considered in rendering the decision, but that testimony is there. It was to be used in the enablement motion in motion 3. It is easier from a technology standpoint to send the support back to the chamber it came from. When you start moving them, whether you have a rotary array or a parallel array, you need more sophisticated controls, something that counsel referred to. You now have to watch it. Where is it going next? None of that's described because the Goldberg application simply doesn't contemplate moving it to another reaction chamber. It's not important. It's not enough, Your Honor, not to forbid what's claimed. That just gets you possibly to the point where it's obvious to do something else. Is that your point about the comprising argument? Yes. There is an argument in the Goldberg brief that because nowhere does the Goldberg application teach you that you must not send it to a different chamber, the support is described as moving to one or another. That's wrong. It's not enough to render it obvious. It's not enough to fail to say no. You must, as the applicant to support the claim, positively, expressly or inherently state that it does move, and that's what's missing. And if comprising is interpreted as it is for infringement purposes to include something else, it can include anything else. It could include anything else, Your Honor. It could include moving to a different reaction chamber or the same reaction chamber. As long as it moves once to a second reaction chamber. And the term comprising for the purpose of claim interpretation in an absence of presumption of validity isn't interpreted, I don't think, any differently, any more narrowly in the context we have here. So if I'm Goldberg and I agree with you as to what's adequately described in the written description section of the application, then in my claims I should be saying placing the support into a chamber and then later placing said support into a chamber, just a chamber instead of another chamber. So the error was using the word another. Absolutely, Your Honor. Absolutely. It's this concept of movement. And that's where you get into this argument about whether you can look to the Goldberg. Could another reasonably be interpreted as synonymous with later rather than different? Could it be the same chamber later? Yes. It embraces both alternatives. It's not synonymous with one or the other. In your later step, that chamber it's moving to could be the same or another. But it doesn't take the place of. If that claim had been presented, you can argue whether it would have been considered patentable or not. I think that's been done. But there would have been a motion for no interference in fact because that's not Bass's invention. That's the problem. Bass's invention is saying move it to another chamber, not the same or another. Move it to another. Just to follow up on that point, if Goldberg is indifferent and Goldberg is saying it could be another, it could be the same, it really doesn't matter. You're saying that that's not enough to encompass a recitation requiring another. It's not enough to support a recitation requiring that. The claim that Judge Michel described. Again, it's the genus species problem that Judge Laurie was alluding to, although we're talking about a very small genus. That's correct, Your Honor. I want to take one minute to focus on a decision this Court handed down subsequent to briefing. That's Goldenbridge v. Nokia, the May 8 decision. That again repeats the formula that you've got to raise an argument below in order to raise it above, absent special circumstances, not present here. It's not enough to raise the general rubric of claim construction or in Goldenbridge anticipation. What wasn't raised below comprising? I'm sorry, Your Honor? What wasn't raised below comprising? The specific argument that the limitation in the preamble took the claim out of anticipation, that the reference no longer anticipated. That wasn't presented to the District Court. A different argument to anticipation was presented. That principle is applicable here, Your Honors. It's raised too late. All right, thank you. Ms. Wells, you have three minutes or so for rebuttal. Preliminarily, can you help me understand the chain of attorneys here? We started out with somebody from the company in Santa Clara, and then on the blue brief, then on the gray brief, we had a group known as Ash PC. Are you Ash PC? No. You're some third entity? I am from Affymetrix. We're back to Affymetrix. Back to the company. All right. This is Ash PC. Oliver Ash here has been consistent throughout this process. I see. Okay. Go ahead. So I want to hit your first point. I want to just be clear that our position is that all of the claims stand and fall together. So while I focused on Claim 75, our position is that the arguments that I've made with respect to Claim 75 apply to all of the claims. I want to also say that the standard for written description is what the specification would have reasonably conveyed to one of ordinary skill in the art. Goldberg's assertion, which is not disputed in the record, is that the Goldberg specification teaches method comprising moving a substrate into the same or another reaction chamber. It's not relevant whether it's the same or another. There are only two possibilities when you're moving that support back into that bank of reaction chambers. It has to be either back into the same or into another. Bass's own witness, Dr. Peck, understood this to be the teaching of Goldberg. That's at A1226. But there's no disclosure of a requirement that it be placed in another. And the claim shouldn't require that it only be placed into another. So our position again is that under the proper claim construction, Goldberg has adequate written description support for the claimed methods of moving the support into the same or another reaction chamber. All right. Thank you. We thank both counsel. We'll take 1519 under submission.